# Illinois Official Reports

## Appellate Court

---

*State ex rel. Leibowitz v. Family Vision Care, LLC*, 2019 IL App (1st) 180697

---

| | |
|---|---|
| Appellate Court Caption | THE STATE OF ILLINOIS *ex rel.* DAVID P. LEIBOWITZ, as Trustee of the Bankruptcy Estate of Marie A. Cahill, Plaintiff-Appellant, v. FAMILY VISION CARE, LLC, NOVAMED MANAGEMENT SERVICE, LLC, SURGERY PARTNERS, INC., and JENNIFER GULA, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-18-0697 |
| Filed | March 12, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-4200; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | Matthew J. Piers, Jose J. Behar, and Charles D. Wysong, of Hughes, Socol, Piers, Resnick & Dym, Ltd., of Chicago, for appellant.<br><br>J. Christian Nemeth, Joshua T. Buchman, and Jennifer Aronoff, of McDermott Will & Emery LLP, of Chicago, for appellees. |

| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Mason and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    We are asked to decide two interrelated questions under the Insurance Claims Fraud Protection Act (Act) (740 ILCS 92/1 *et seq.* (West 2016)): (i) whether the State can assign to a third party an injury to its sovereignty and (ii) whether the third party can derive standing from that injury absent monetary damages to the State? Both questions present an issue of first expression.

¶ 2    The trial court found the plaintiff, trustee for the bankruptcy estate of Marie Cahill, lacked standing because the State only suffered an injury to its sovereignty, not a pecuniary loss, and the State cannot assign an injury to its sovereignty to a private citizen. The court also found the plaintiff was not an "interested person" under the Act, as Cahill did not suffer an injury related to the claim and did not allege how determination of the controversy would affect a claim or right personal to her.

¶ 3    We differ with the trial court's standing analysis. Under the plain language of the Act and its purpose in combating insurance fraud, the State need not have suffered monetary damages to confer standing on a relator. Moreover, in the *qui tam* context, a whistleblower employee like Cahill, who has personal, nonpublic information of possible wrongdoing, is an "interested person" under the statute and need not have a personal injury to have standing.

¶ 4    We agree with the trial court that dismissal was not warranted by the separation agreement or for failure to state a claim. Thus, we affirm in part, reverse in part, and remand for further proceedings.

¶ 5                                    Background

¶ 6    Family Vision Care, LLC, is an optometrist practice in LaGrange, Illinois. NovaMed Management Service, LLC, a medical practice management company, purchased Family Vision Care, LLC, and merged with Surgery Partners, Inc. (Surgery Partners), a publicly traded company. Dr. Jennifer Gula is an optometrist at Family Vision Care, LLC, with no ownership interest in the practice. (Defendants will be referred to as "Family Vision Care.")

¶ 7    Cahill worked for Family Vision Care from October 2012 through January 2016. As an office administrator, Cahill handled insurance billing practices. According to Cahill, about 90% of Family Vision Care's revenue came from claims it submitted to Vision Service Plan (VSP), a vision care health insurance company. VSP only covers claims from optometrists who have "majority ownership and complete control" of their medical practices. A practice must sign a provider agreement certifying itself as optometrist owned and controlled before VSP will make any insurance payments. Cahill alleges Family Vision Care engaged in fraud by knowingly and falsely certifying their eligibility for VSP insurance payments and accepting payments to which they were not entitled. Specifically, Cahill alleges, in part, that Dr. Gula signed the provider agreements falsely certifying to VSP that she owned Family

Vision Care. Cahill also alleges Frank Soppa, a Surgery Partners executive, instructed her to tell VSP that Dr. Gula owned Family Vision Care.

¶ 8 In February 2016, after Cahill left Family Vision Care, she signed a separation agreement and general release "fully and unconditionally" releasing and discharging her employer from liability, claims, and causes of action "arising *** out of or in connection with Employee's employment or separation from employment with Employer, and all claims for any act or failure to act that occurred up to the time that Employee signs this Agreement."

¶ 9 Cahill filed for bankruptcy in January 2016. More than a year later, the trustee of the bankruptcy estate (Estate) filed a one-count complaint against Family Vision Care alleging violation of section 5 of the Act (*id.* § 5) for fraudulently submitting false claims to VSP, which is not a party. (The complaint was filed under the caption "State of Illinois *ex rel.* Bankruptcy Estate of Marie A. Cahill," but federal law provides that it is the trustee who may prosecute an action on behalf of the bankruptcy estate. 11 U.S.C. § 323(b) (2012). The record indicates that David P. Leibowitz is the bankruptcy estate's trustee.) Section 15(a) of the Act is a *qui tam* enforcement provision, allowing private whistleblowers with undisclosed information about insurance fraud to sue for civil penalties. 740 ILCS 92/15(a) (West 2016). The Estate's complaint asserts the State is the real party in interest and Cahill is an "interested person" under section 15(a), giving the Estate standing to sue on behalf of her and the State. The State declined to intervene.

¶ 10 Family Vision Care filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), arguing (i) under section 2-615 (*id.* § 2-615), the Estate's complaint fails to allege a violation of the Act with sufficient particularity; (ii) under section 2-619(a)(6) (*id.* § 2-619(a)(6)), Cahill's severance agreement releasing "any and all claims" against Family Vision Care warranted dismissal; and (iii) under section 2-619(a)(9) (*id.* § 2-619(a)(9)), the Estate lacked standing as not a directly injured "interested person" and that only VSP could bring a *qui tam* claim under the Act. Family Vision Care further asserted that, although the State would have standing to enforce its laws, it cannot assign its standing to a private citizen.

¶ 11 The trial court denied Family Vision Care's section 2-615 motion finding Cahill alleged fraudulent conduct with sufficient specificity. The court also denied Family Vision Care's request for dismissal under section 2-619(a)(6) based on the separation agreement, finding questions of fact exist as to whether Cahill could have released the bankruptcy estate's claim, as well as whether Cahill's claim falls under the release. As to standing, the trial court dismissed the complaint, finding the Estate failed to allege or explain how it has standing to bring a claim under the Act. Specifically, the court observed that unlike the False Claims Act (740 ILCS 175/4(b)(1) (West 2016)), which states that "A *person* may bring a civil action" for violation of the statute, the Act states that the relator must be an "*interested* person." (Emphases added.) 740 ILCS 92/15 (West 2016). Noting that the Act does not define "interested person," the court decided, after supplemental briefing, that a claimant must hold some legal interest in the cause of action. The court concluded that the Estate had not demonstrated Cahill suffered an injury related to the claim or how determination of the controversy would affect "a personal claim, status, or right." Thus, the Estate lacked standing.

¶ 12 Further, the trial court stated that even if the Estate could bring a *qui tam* action, the Estate did not allege an "injury in fact" the State could assign to it. Referencing the False

Claims Act, the trial court stated that it addresses allegations of fraudulently obtained public funds and actual monetary damages suffered by the State. Conversely, the State's only injury from a purported Act violation is to its sovereignty, not to its treasury, and the State could not assign that injury to a private citizen.

¶ 13 The Estate moved for, and the court granted, dismissal with prejudice and entered a final judgment.

¶ 14                                                       Analysis

¶ 15 The Estate contends the trial court erred in finding it did not have standing under the Act because (i) the State suffered an "injury in fact" to its sovereignty based on violation of its laws and could assign its standing to the Estate and (ii) the Estate is an "interested person" under the section 15(a). Family Vision Care asks us to affirm the findings that the State has not suffered an assignable injury in fact and that the Estate is not an "interested person" as Cahill was not personally injured. Alternatively, Family Vision Care argues that if we disagree with the findings regarding standing, we should affirm the dismissal under either section 2-615, as the Estate failed to plead fraud with particularity, or section 2-619(a)(6), as the separation agreement bars the claim.

¶ 16                                                       The Act

¶ 17 The Act, which the Illinois General Assembly adopted in 2001, added civil penalties to existing criminal remedies for fraud against private insurance companies. Relevant to this case, subsection 5(b) creates a private cause of action against any entity that violates the Illinois criminal code relating to insurance fraud. *Id.* § 5(b). The criminal law referenced in subsection (b) states that a person commits insurance fraud "when he or she knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company *** by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company *** intending to deprive an insurance company or self-insured entity permanently of the use and benefit of that property." 720 ILCS 5/17-10.5(a)(1) (West 2016).

¶ 18 The Act adopts nearly word-for-word a statute from California (see Cal. Ins. Code § 1871.7 (West 2016)). Both the Illinois and California statutes, which are the only laws of their kind in the United States, include a *qui tam* enforcement provision allowing private whistleblowers with information about insurance fraud to sue for civil penalties. Section 15(a) of the Act provides that "An interested person, including an insurer, may bring a civil action for a violation of this Act for the person and for the State of Illinois." 740 ILCS 92/15(a) (West 2016).

¶ 19                                                       Standing

¶ 20 A plaintiff has standing to sue as long as he or she complains of some injury in fact to a legally cognizable interest. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). More precisely, the claimed injury, whether actual or threatened, must be (i) distinct and palpable, () fairly traceable to the defendant's actions, and (iii) substantially likely to be prevented or redressed by the grant of the requested relief. *Id.* at 492-93.

Standing ensures courts decide actual, specific controversies and not abstract questions or moot issues. *People ex rel. Madigan v. Burge*, 2012 IL App (1st) 122842, ¶ 31.

¶ 21    A plaintiff need not allege facts establishing standing. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004). Rather, the defendant bears the burden to plead and prove lack of standing. *Chicago Teachers Union v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000). Where a motion to dismiss challenges standing, a court accepts as true all well-pleaded facts in the complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004). A court's disposition of a section 2-619 motion on lack of standing presents a question of law, which we review *de novo*. *Wexler*, 211 Ill. 2d at 23.

¶ 22    By definition, *qui tam* suits involve claims brought by private parties to assist the executive branch in enforcing the law, "the violation of which affects the interest of the government, not the individual relator, whose only motivation in bringing the suit is to recover a piece of the action given by statute." *United States ex rel. Hall v. Tribal Development Corp.*, 49 F.3d 1208, 1212 (7th Cir. 1995). A "*qui tam* plaintiff" or "relator" is generally likened to private attorneys general who stand in the shoes of the state. *Lyons v. Ryan*, 324 Ill. App. 3d 1094, 1107-08 (2001). The relator has no personal stake in the damages sought—all of which, by definition, were suffered by the government. *State ex rel. Beeler, Schad & Diamond, P.C. v. Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d 507, 513 (2006). Although *qui tam* actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public, "when a legislative body enacts provisions enabling *qui tam* actions, that act carries with it an understanding that in such suits it is the government, and not the individual relator, who has suffered the injury resulting from the violation of the underlying law and is therefore the real plaintiff in the action." *United States ex rel. Hall*, 49 F.3d at 1212.

¶ 23    Of course, the State suffers an injury to its sovereignty when its laws are violated. See *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (government suffers "injury to its sovereignty arising from violation of its laws"). And the State also has an interest in protecting the public from insurance fraud and the authority to enact laws to prevent it. *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 559 (1999) ("the legislature has broad discretion to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest" (internal quotation marks omitted)).

¶ 24    Standing in *qui tam* litigation under the False Claims Act has been addressed by the Illinois Supreme Court. In *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 508 (2005), the court acknowledged that in a *qui tam* case there is "no cognizable injury in fact suffered by the relator." But, relying on the United States Supreme Court's decision in *Vermont Agency*, 529 U.S. 765, the court held that a relator has standing as a partial assignee of the State's claim. *Scachitti*, 215 Ill. 2d at 508. In *Vermont Agency*, the Supreme Court held "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor" as an adequate basis for *qui tam* relator standing because "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Vermont Agency*, 529 U.S. at 773. So, the relator's complaint alleging an injury in fact to the United States sufficed to confer standing on the relator. *Id.* at 774.

¶ 25    Adopting the reasoning in *Vermont Agency*, the Illinois Supreme Court held that a *qui tam* claim constitutes a partial assignment of the State's claim under the *qui tam* provisions of the Act, permitting a private person to " 'bring a civil action for a violation of [the Act] *for the person and for the State*.' (Emphasis added.) 740 ILCS 175/4(b)(1) (West 2002)." *Scachitti*, 215 Ill. 2d at 508. "In other words, the interest of a *qui tam* plaintiff in a claim under the Act is justified as a partial assignment of the state's right to bring suit." *Id.*

¶ 26    The Estate asserts that, like the False Claims Act, the Act allows a relator to bring a civil action "for the person and for the State of Illinois" and, thus, under *Scachitti*, the Estate has an interest as the assignee of the State's interest in bringing the suit. The Estate asserts the *qui tam* provision empowers a private relator to sue on behalf of the State, regardless of a personal financial stake. And as with False Claims Act cases, the attorney general controls the litigation and can intervene to litigate or dismiss the claim, which prevents abuse of the statute.

¶ 27    Family Vision Care agrees that an injury to the relator is not required in a *qui tam* action. But, they argue the Estate does not have standing under the "narrow exception" delineated in *Vermont Agency* and *Scachitti*, as the State has not suffered any monetary damages. Family Vision Care points to the language in *Vermont Agency* that "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's *damages* claim." (Emphasis added.) *Vermont Agency*, 529 U.S. at 773. Family Vision Care asserts that when the Illinois Supreme Court, in *Scachitti*, adopted the reasoning in *Vermont Agency*, it too held that in a *qui tam* action under the False Claims Act, the State could affect a partial assignment of its interest in monetary damages, nothing more.

¶ 28    Family Vision Care also contends the text of the False Claims Act and the Act amplifies this difference. Specifically, Family Vision Care notes that a person who violates the False Claims Act is liable for a civil penalty "plus 3 times the amount of *damages* which the State sustains because of the act of that person," and the relator may recover up to "30% of the proceeds of the action or settlement." (Emphasis added.) 740 ILCS 175/3(a)(1), 4(d)(2) (West 2016). Conversely, a person who violates the Act is subject to a civil penalty "plus an *assessment* of not more than 3 times the amount of each claim for compensation under a contract of insurance," and the law permits a relator to recover not "less than 30% of the proceeds of the action or settlement of the claim," with no upper limit. (Emphasis added.) 740 ILCS 92/5(b), 25(a)-(b) (West 2016). Family Vision Care argues that use of the word "assessment" rather than "damages" in light of the language in *Vermont Agency* and *Scachitti*, indicates that the Act was not intended to allow private individuals to litigate a violation on behalf of the State.

¶ 29    We disagree. As Family Vision Care acknowledges, neither *Scachitti* nor *Vermont Agency* directly address whether a *qui tam* relator can have standing when a claim does not involve monetary damages. Both cases hold that the government's standing rests on the "injury to its sovereignty based on the violation of its laws," as well as the "proprietary" injury suffered in False Claims Act cases. *Scachitti*, 215 Ill. 2d at 507; *Vermont Agency*, 529 U.S. at 771. But, the plain language of the Act and its purpose support a finding that the State need not have suffered monetary damages to confer standing on a relator. Section 15(a) provides "[a]n interested person, including an insurer, may bring a civil action for violation of this Act for the person and for the State of Illinois." It does not require the State to have incurred monetary damages for an "interested person" to bring a civil action on the State's

behalf. Moreover, the statute's purpose directly involves combating insurance fraud, not recouping damages. Requiring the State to assign damages to a relator would defeat the purpose of the Act because it would preclude a whistleblower from bringing a claim on the State's behalf.

¶ 30    Relator cites numerous statutes from the 1800s that allowed a private citizen to enforce civil penalties in the absence of any financial loss to the government. Although those long dormant statutes provide a context for examining current *qui tam* statutes, they provide little support on the issue of standing under the Act. More significantly, relator cites *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010), concerning the government's assignment of a purely sovereign interest to a relator under a *qui tam* statute. In *Stauffer*, the *qui tam* relator was a patent attorney who purchased bow ties made by the defendant, which the relator claimed to have been falsely marked in violation of 35 U.S.C. § 292(b) (2006). The court reasoned that the "*qui tam* provision operates as a statutory assignment of the United States' rights, and 'the assignee of a claim has standing to assert the injury in fact suffered by the assignor.' " *Stauffer*, 619 F.3d at 1325 (quoting *Vermont Agency*, 529 U.S. at 773). The court concluded that by creating the statute, Congress determined that a deceptive patent marking was harmful and prohibited; therefore, a violation of section 292 inherently constitutes an injury to the United States. *Id.* The court further reasoned that because the government would have standing to enforce section 292, the relator, as the government's assignee, also had standing to enforce section 292. *Id.* The court held that the plaintiff, by acting as the government's assignee, had standing to enforce section 292 against the defendant without alleging injury to himself or herself. Citing *Vermont Agency*, the court stated "we consider the question decided, that the United States may assign even a purely sovereign interest." *Id.* at 1327 n.3. *Stauffer*, while not binding on this court, supports holding that the State may assign its purely sovereign interest in enforcing the Act.

¶ 31    Family Vision Care's contention that allowing a citizen to sue on behalf of the State will open the proverbial floodgates to litigants seeking a fee is without merit. A plaintiff may bring a *qui tam* claim only if (i) the State authorizes the relator to sue on behalf of the State and the relator and (ii) the State retains control of the litigation. *Scachitti*, 215 Ill. 2d at 494. The Act requires both. Further, for the Act—a statute designed for the purpose of deterring insurance fraud—to have an effect, witnesses of potentially fraudulent insurance claims, like Cahill, must be able to bring a complaint.

¶ 32    Thus, if the Estate qualifies as an "interested person" under section 15 of the Act, it may act as an assignee of the State to enforce section 5 of the statute.

¶ 33                              Is the Estate an "Interested Person"?

¶ 34    The Estate contends the trial court erred when it found Cahill was not an "interested person" under the Act. The Estate argues the trial court's definition of an "interested person" as one who has a "personal claim, status, or right" cuts too narrowly, has no basis in the text of the Act or the California analogue, and defeats the statute's purpose. Also, the trial court's interpretation would preclude Act claims by anyone other than an insurance company that lost money from the fraudulent conduct.

¶ 35    Family Vision Care responds that the Estate misinterprets the trial court's ruling, which never stated that only a defrauded insurance company could be an "interested person." Family Vision Care asserts the court correctly defined an "interested person" as one who

holds some "legal interest" in the cause of action and that Cahill was not an interested person, as she failed to allege she suffered an injury. Essentially, Family Vision Care excludes a whistleblower from encompassing an "interested person," unless he or she has been personally injured.

¶ 36    The statute fails to define the term "interested person," so we apply the rules of statutory construction to ascertain and give effect to the intent of the legislature. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000) (language of statute offers "the most reliable indicator of the legislature's objectives in enacting a particular law"). We give the statutory language its plain, ordinary, and popularly understood meaning (*Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 397 (1990)) and afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible. *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 423 (1988). Each word, clause, and sentence of a statute must be given a reasonable meaning and not rendered superfluous. *People v. Perez*, 2014 IL 115927, ¶ 9. And the meaning cannot be determined in isolation but, rather, must be drawn from its context. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 27.

¶ 37    Looking at the plain language of section 15(a) in light of other provisions of the statute and the statute's purpose, reveals that "interested person" includes whistleblowers like Cahill. For instance, section 40 of the Act offers protections for employees who bring claims under the Act. 740 ILCS 92/40 (West 2016).

¶ 38    At oral argument, Family Vision Care suggested that "employee" in section 40 refers to an insurance company employee. But, this interpretation makes little sense because an insurance company employee would be unlikely to face retaliation for identifying claims that defraud their employer. Section 40's protections plainly apply to an employee of a health care provider, who, as a whistleblower, identifies potential fraud by his or her employer, and risks the possibility of retaliation.

¶ 39    Allowing whistleblowers, like Cahill, who have evidence of potential fraud to bring a claim, also advances the Act's purpose—protection of the public from insurance fraud. Statutes must be interpreted with a view toward "the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Perez*, 2014 IL 115927, ¶ 9. The goals of the Act include "disgorging unlawful profit, restitution, compensating the State for the costs of investigation and prosecution, and alleviating the social costs of increased insurance rates due to fraud." 740 ILCS 92/5(c) (West 2016). Permitting parties who have information about possible insurance fraud to bring the claim on the State's behalf satisfies these goals.

¶ 40    Family Vision Care argues the word "interested" must mean something otherwise it is superfluous as "interested" does not appear in the *qui tam* section of the False Claims Act. 740 ILCS 175/4 (West 2016). In addition, Family Vision Care asserts that the history of the use of the words "interested person" shows it does not include Cahill, citing California cases interpreting California statutes to require the plaintiff have a direct interest in the litigation. None of the cases Family Vision Care cites, however, involve a *qui tam* action or section 1871.7 of the California Insurance Code. For instance, *Torres v. City of Yorba Linda*, 17 Cal. Rptr. 2d 400 (Ct. App. 1993), also cited by the trial court, discusses standing of a member of the public in a declaratory judgment action challenging the lawfulness of government action. See also *California Department of Consumer Affairs v. Superior Court*, 199 Cal. Rptr. 3d 354

- 8 -

(Ct. App. 2016) (plaintiffs not interested persons entitled to challenge state's lemon law when they did not own car manufactured by company participating in program).

¶ 41 Indeed, in *People ex rel. Alzayat v. Hebb*, 226 Cal. Rptr. 3d 867, 889 (Ct. App. 2017), a California appellate court held that "[a]s a true *qui tam* provision, Insurance Code section 1871.7 does not mandate that the relator has suffered his or her own injury." The court further noted that the lawsuit under section 1871.7 was "based on an injury allegedly suffered by the People of the State of California, and was not filed for the purpose of remedying an injury suffered by [the relator]." *Id.* at 888. As noted, the Act follows directly on the California statute and *Hebb* supports a finding that Act claims are not restricted only to insurance companies or individual relators who have been personally injured.

¶ 42 Family Vision Care also suggests we look to the Probate Act of 1975, which defines an "interested person" as "one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved." 755 ILCS 5/1-2.11 (West 2016). But the question of who can sue as an interested person in probate proceedings has no bearing on who can be a relator in an Act *qui tam* action. The definition or meaning of a word cannot be blindly transferred from one context to another. See *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 22 ("Care must be taken when importing the definition of a term from one statute to another, since 'the context in which a term is used obviously bears upon its intended meaning.' " (quoting *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 29)); see also *Corbett*, 2017 IL 121536, ¶ 38 (in a case involving a bicyclist who was injured on a bike path, it was inappropriate to import the definition of "trail" from one statute to another). Family Vision Care cites nothing to support a finding that the General Assembly was referring to the Probate Act of 1975's use of "interested persons" when it adopted the Act.

¶ 43 In the *qui tam* context, an employee like Cahill is an "interested person" as she has nonpublic information of possible wrongdoing and, as a whistleblower, does not need to have a personal injury to have standing. Notably, the phrase "interested person" only appears once—in section 15(a)—and is never mentioned again in the statute. And, as noted, the General Assembly did not bother to define the phrase. Conversely, the word "person," in relation to the party bringing a claim under the Act, appears at least 29 times. Although Family Vision Care would have us focus on the word "interested," its absence in the remainder of the statutory provisions describing the party bringing a claim supports our finding that the word is descriptive rather than restrictive.

¶ 44 Even if Cahill is an interested person by virtue of her whistleblower status, Family Vision Care maintains that the bankruptcy estate does not possess material information of potential wrongdoing by Family Vision Care, only Cahill. But, "once a bankruptcy action is instituted, all unliquidated lawsuits become part of the bankruptcy estate and only the bankruptcy trustee has standing to pursue them." *Board of Managers of the 1120 Club Condominium Ass'n v. 1120 Club, LLC*, 2016 IL App (1st) 143849, ¶ 41. The Estate has standing.

¶ 45                                    Separation Agreement

¶ 46 Next, even if the Estate has standing under the Act, Family Vision Care argues that the release Cahill signed at the end of her employment bars her complaint. The trial court denied dismissal, finding questions of fact exist as to whether Cahill could have released the Estate's claim and whether Cahill's claim falls under the language of the release provision.

¶ 47　　A dismissal would be warranted where the claim set forth has been released, satisfied of record, or discharged in bankruptcy. 735 ILCS 5/2-619(a)(6) (West 2016). When ruling on a section 2-619 motion, courts consider all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1001 (2010). We review a motion to dismiss *de novo*. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008).

¶ 48　　A settlement agreement is a contract governed by principles of contract law. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). We determine the intention of the parties from the settlement agreement, unless it is ambiguous. *Id.* Ambiguity means capable of being understood in more than one sense. *Id.* Releases are strictly construed against the benefitting party and must spell out the parties' intention with particularity. *Janowiak*, 402 Ill. App. 3d at 1014. A motion to dismiss based on a release, where defendants present a facially valid release, shifts the burden to the plaintiff to sufficiently allege and prove that a material issue of fact exists that would invalidate the release. *Id.* at 1005.

¶ 49　　Family Vision Care asserts that the Estate should be estopped from arguing the release cannot be enforced against it because (unbeknown to them) Cahill had already filed for bankruptcy when she signed the release, in exchange for compensation that was property of the Estate. Family Vision Care also asserts it would be inequitable to allow the Estate to derive knowledge about the claim from Cahill and then disavow the release she signed. Both arguments fail. By its plain language, the release does not apply to the claim here.

¶ 50　　The release applies to "all claims arising or that arose or may have arisen out of or in connection with Employee's employment or separation with Employer." A *qui tam* claim alleging insurance fraud does not constitute a claim arising out of or in connection with Cahill's employment. Simply because Cahill learned of the potentially fraudulent claims during her employment does not establish the complaint arose out of employment.

¶ 51　　Moreover, Family Vision Care's estoppel arguments have no merit. As noted, "once a bankruptcy action is instituted, all unliquidated lawsuits become part of the bankruptcy estate and only the bankruptcy trustee has standing to pursue them." *Board of Managers of the 1120 Club Condominium Ass'n*, 2016 IL App (1st) 143849, ¶ 41. Hence, only the bankruptcy estate could release the claim. *Hoseman v. Weinschneider*, 322 F.3d 468, 475 (7th Cir. 2003) ("bankruptcy trustees *** are generally given broad discretion *** to decide whether a compromise settlement—which may include a release of future claims or a covenant not to sue—is preferable to protracted litigation"). The Estate did not sign the document, so even if it did apply to fraud claims, it could not be used as a bar to the Estate's complaint.

¶ 52　　Moreover, the State is the real party in interest, and a relator filing on behalf of the State cannot waive the State's claim. *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 969 (9th Cir. 1995) (prefiling releases of *qui tam* claims, when entered into without United States' knowledge or consent, cannot be enforced to bar later *qui tam* claim).

¶ 53　　We affirm the trial court's decision not to dismiss under section 2-619.

Sufficiency of Pleadings

¶ 55　　Finally, Family Vision Care contends section 2-615 warrants dismissal because under the heightened standard for fraud allegations, the complaint failed to plead fraud with sufficient particularity and does not delineate or describe a single false claim submitted to VSP.

¶ 56 A motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint based on defects apparent on its face. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. We construe the allegations of the complaint in the light most favorable to the plaintiff and determine whether they state a cause of action on which relief can be granted. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. In making this determination, we take as true all well-pleaded facts, and all reasonable inferences drawn from those facts. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 5. Dismissal requires finding no set of facts that would permit the plaintiff to recover. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. Review under a section 2-615 dismissal is *de novo*. *Id.*

¶ 57 "Fraud claims must be pleaded with sufficient specificity, particularity, and certainty to apprise the opposing party of what he is called upon to answer." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. A plaintiff must allege with specificity and particularity, facts from which fraud is the necessary or probable inference, including the misrepresentations, when they were made, who made them, and to whom they were made. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496-97 (1996).

¶ 58 The Estate alleged Dr. Gula signed the VSP provider agreements since 2014, certifying she had a majority ownership of Family Vision Care and complied with VSP's requirements for insurance reimbursement. The Estate attached a copy of a provider agreement as an exhibit with Dr. Gula's signature. The complaint also alleged Family Vision Care knew of VSP's ownership requirements but, at the direction of Surgery Partners, Dr. Gula and Family Vision Care continued to make false representations to VSP throughout Surgery Partners' ownership of Family Vision Care. And that Frank Soppy, a vice president at Surgery Partners, instructed Cahill to tell VSP that Family Vision Care was a sole proprietorship owned by Dr. Gula. These allegations satisfy the heightened standard for common law fraud, and invoke the what, when, and who of Family Vision Care's misrepresentations. *Id.*; *Avon Hardware Co.*, 2013 IL App (1st) 130750, ¶ 15.

¶ 59 Affirmed in part, reversed in part, and remanded.